IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-7-FL

| | |
|---|---|
| ROLAND L. WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JACKSONVILLE POLICE DEPARTMENT, )<br>TIMOTHY CARR, KEVIN DOYLE, and )<br>STEPHANIE MOSER, )<br>)<br>Defendants. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This pro se case is before the court for continued frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B), the matter having been referred to the undersigned by the Honorable Louise W. Flanagan, United States District Judge. For the reasons set forth below, the court RECOMMENDS that Plaintiff's complaint be dismissed.

## DISCUSSION

### I. Background

Plaintiff applied for in forma pauperis (IFP) status and filed his original complaint on January 20, 2021, naming certain individuals and entities as defendants. (IFP Application [DE #1]; Prop. Compl. [DE #1-1].) On September 20, 2021, the court granted Plaintiff IFP status and ordered that Plaintiff file a particularized complaint. (Order dated Sept. 20, 2021 [DE #6].) On October 4, 2021, Plaintiff submitted a letter to the court, which the undersigned construes as Plaintiff's response to the order to particularize his complaint. (Letter [DE #7].)

## II. Standard for Frivolity Review

Notwithstanding the prior determination that Plaintiff is entitled to IFP status, the court is required to dismiss all or part of an action found to be frivolous or malicious, which fails to state a claim on which relief can be granted, or which seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2); *Michau v. Charleston County*, 434 F.3d 725, 728 (4th Cir. 2006). A case is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Pro se complaints are entitled to a more liberal treatment than pleadings drafted by lawyers. *See White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). However, the court is not required to accept a pro se plaintiff's contentions as true. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). The court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. In making the "inherently elastic" frivolity determination, *Nagy v. FMC Butner*, 376 F.3d 252, 256–57 (4th Cir. 2004), the court may "apply common sense," *Nasim v. Warden., Md. House of Correction*, 64 F.3d 951, 954 (4th Cir. 1995).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to give a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The statement must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff must offer more detail . . . than the bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391,

2

405 (4th Cir. 2001); see also White, 886 F.2d at 723 (affirming district court's dismissal of suit as frivolous where complaint "failed to contain any factual allegations tending to support [plaintiff's] bare assertion"). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. While the court must read the complaint carefully to determine if the plaintiff has alleged facts sufficient to support his claims, White, 886 F.2d at 724, the court is not required to act as the pro se plaintiff's advocate or to parse through volumes of documents or discursive arguments in an attempt to discern the plaintiff's unexpressed intent, Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013).

### III. Plaintiff's Claims

Plaintiff asserts violations of his Fourth, Fifth, and Fourteenth Amendment rights by the Jacksonville, North Carolina, Police Department ("JPD") and its officers Timothy Carr and Kevin Doyle. (Prop. Compl.; Letter.) Plaintiff does not specify whether he is suing the officers in their individual or official capacities. (Id.) Plaintiff also asserts that Onslow County Assistant District Attorney (ADA) Stephanie Moser violated his constitutional rights. (Id.)

Although not explicitly invoked by Plaintiff, but given Plaintiff's pro se status, the undersigned construes Plaintiff's claims for constitutional violations as being brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff

3

Case 7:21-cv-00007-FL Document 8 Filed 12/03/21 Page 3 of 16

must allege facts to support the following findings: (1) that he has been deprived of a federal right; and (2) that the person who deprived him of his federal right did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[P]rivate conduct, no matter how discriminatory or wrongful," is not actionable under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). In sum, § 1983 provides the legal basis for people to sue government actors for violations of their constitutionally protected rights.

### A. Jacksonville Police Department

Plaintiff has failed to state a claim against the Jacksonville Police Department. A North Carolina municipal police department is not a legal entity capable of being sued. *Phipps v. Grady*, No. 7:17-CV-78-H, 2018 WL 1144976, at *2 (E.D.N.C. Mar. 2, 2018) ("By statute, the city or county is the legal entity which can sue and be sued, not the sheriff's department or police department of a county or city."); *Williams El v. Ivey*, No. 5:19-CV-302-FL, 2020 WL 1488560, at *3 (E.D.N.C. Feb. 2, 2020) (citing *Phipps*), *mem. & recommendation adopted by* 2020 WL 1492810 (E.D.N.C. Mar. 26, 2020). Thus, Plaintiff's claims against the Jacksonville Police Department should be dismissed.[1]

---

[1] Had Plaintiff named the City of Jacksonville as a defendant, dismissal would still be appropriate. To establish liability against a local government under § 1983, a plaintiff must show that the alleged constitutional injury is attributable to an official policy, procedure, or custom of the municipality. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). Plaintiff fails to allege that any constitutional violations were taken in furtherance of a city-wide policy or custom. *See Anderson v. Croley*, No. 5:18-CT-3020-FL, 2019 WL 2864752, at *4 (E.D.N.C. July 2, 2019) (dismissing *Monell* claim where amended complaint failed to allege violation of county-wide policy or custom). While Plaintiff alleges that two officers of

4

B.  Assistant District Attorney Moser

Prosecutors are absolutely immune from individual liability for acts taken in carrying out their prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Such activities include determining whether and when to initial criminal proceedings and in prosecuting the case. *Id.* at 430–31 (reasoning that the work of the prosecutor would be impeded were prosecutors not absolutely immune for activities "intimately associated with the judicial phase of the criminal process").

The actions of ADA Moser of which Plaintiff complains concern conduct taken during judicial proceedings. (Prop. Compl. at 7, 12.) Plaintiff alleges that during a break in court proceedings, ADA Moser conspired with Officer Carr to deny Plaintiff "a fair and an impartial jury trial" on July 1, 2019, by dismissing some criminal charges which were pending against Plaintiff. (*Id.* at 12.) This is the very type of function to which prosecutorial immunity was intended to apply. Plaintiff's claims against ADA Moser are, therefore, barred by prosecutorial immunity.

C.  Individual Officers

As a preliminary point, Plaintiff has not specified whether he is seeking to sue the officers in their official or individual capacities. An official capacity suit is generally another way of pleading an action against the entity of which the officer is

---

Jacksonville's municipal police department violated his Fourth, Fifth, and Fourteenth Amendment rights on particular dates, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003).

an agent. *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982); *Wyche v. City of Franklinton*, 837 F. Supp. 137, 144 (E.D.N.C. 1993) ("A suit against a city official in his official capacity is a suit against the city itself."). To the extent Plaintiff seeks to sue the officers in their official capacities, such claims should be dismissed for failure to plead, pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978), that the alleged constitutional violations were a product of an official policy, procedure, or custom. *See Hughes*, 672 F.2d at 406; *supra* note 1. To the extent Plaintiff seeks to sue the officers in their individual capacities, such claims are analyzed below.

Although not a model of clarity, Plaintiff's proposed complaint purports to assert § 1983 claims for (i) malicious prosecution in violation of the Fourth Amendment, (ii) failure to provide *Miranda* warnings in violation of the Fifth Amendment, (iii) coercion of a confession in violation of the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process, and (iv) denial of the Sixth Amendment[2] jury trial right.

---

[2] Plaintiff states that his Fourth Amendment right to a jury trial was violated on July 1, 2019. (Prop. Compl. at 11–12.) It is the Sixth Amendment's jury trial clause, incorporated through the Fourteenth Amendment, which provides a right to a jury trial in criminal matters. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

1. Malicious Prosecution[3]

"A claim of malicious prosecution under § 1983 'is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort' of malicious prosecution." *Quarles v. Weeks*, 815 F. App'x 735, 737 (4th Cir. 2020) (per curiam) (quoting *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 555 (4th Cir. 2017)). "To prevail on such a claim, 'a plaintiff must show that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor.'" *Quarles*, 815 F. App'x at 737 (quoting *Humbert*, 866 F.3d at 555).

Plaintiff's malicious prosecution claim is deficient in two respects. First, it fails to allege that he was seized pursuant to legal process unsupported by probable cause. Second, it fails to allege the criminal proceedings have been terminated in his favor. The opening sentence of Plaintiff's proposed complaint states:

> On January 10, 2017, a warrant was drafted for my arrest, for one count of sale and delivery of rock cocaine; at which I was accused of selling to a confidential reliable informant.

(Prop. Compl. at 4.) Plaintiff states he was arrested pursuant to this warrant in approximately June 2017[4] (Prop. Compl. at 6) and that the charges connected to this

---

[3] Plaintiff's claim is analyzed under the malicious prosecution framework rather than false imprisonment because Plaintiff states he was arrested pursuant to a warrant. *See Bellamy v. Wells*, 548 F. Supp. 2d 234, 237 (W.D. Va. 2008) (noting that false imprisonment claims address detention without legal process).

[4] The June 2017 approximation is based on Plaintiff's statements that he was advised of the existence of the warrant on February 12, 2017, by Officer Doyle; that

7

2017 warrant are "false charges" (Prop. Compl. at 10, 11 ("In September 2019, I learned that the charges in which Detective Carr said he had on me were false"), 12 ("Nonetheless, back in mid-September, when I discovered that these charges were false . . . .")). However, Plaintiff never alleges that the charges were unsupported by probable cause. He merely states in conclusory fashion that these charges were false. Furthermore, Plaintiff never alleges that the criminal proceedings against him have been terminated in his favor. (Prop. Compl.; Letter.) North Carolina judicial records, of which this court may take judicial notice, reflect three felony drug charges pending against one "Roland Lee Williams" in Onslow County, North Carolina, https://www1.aoc.state.nc.us/www/calendars.Criminal.do?county=660&court=BTH&defendant=Williams%2CR&start=0&navindex=0&fromcrimquery=yes&submit=Search (last visited Dec. 2, 2021). Plaintiff has failed to plead a plausible malicious prosecution claim against the officers and this claim should therefore be dismissed.

    2. *Miranda* Violations

Plaintiff claims that Officer Doyle and another JPD officer violated the Fifth Amendment when they spoke with Plaintiff in the front yard of his home on February 12, 2017, for "about twenty minutes" and did not provide *Miranda* warnings to Plaintiff. (Prop. Compl. at 4–5.) According to Plaintiff's version of events, the officers parked in his front yard and asked a family member passing by to let Plaintiff (who

---

Plaintiff left North Carolina for approximately four months after February 12, 2017; and that within a few days of returning to North Carolina, Plaintiff contacted JPD and the local magistrate's office in Onslow County, which resulted in confirmation of the warrant and Plaintiff being arrested and detained for several days before being released on bond. (Prop. Compl. at 5–6.)

8

was in a workshop in the rear of his home) know that they wished to speak with him. (*Id.*) Then Plaintiff came to the front of his home and spoke with the officers for about twenty minutes. (*Id.*)

There is no plausible interpretation of these facts that could meet the custody requirement of *Miranda*. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (protective warnings required whenever "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"); *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (custody for purposes of *Miranda* requires that a "suspect's freedom of action is curtailed to a degree associated with formal arrest" (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)) (internal quotation marks omitted)); *United States v. Hargrove*, 625 F.3d 170, 178 (4th Cir. 2010) (test for determining whether a person is in custody for purposes of *Miranda* is whether under the totality of circumstances a reasonable person would believe he is in custody). According to Plaintiff's own version of the facts, he willingly spoke with officers in the front yard of his home. He has alleged no facts from which it could be inferred that his freedom of action was curtailed by the officers to a degree associated with a formal arrest and this claim should therefore be dismissed as frivolous or for failure to state a claim.

      3.    Coerced Confession

Plaintiff alleges that on July 5, 2019, Officer Carr coerced Plaintiff into signing a written confession "to charges that [Plaintiff] was in court for on July 1, 2019."

9

(Prop. Compl. at 11.) For purposes of frivolity review, the facts surrounding this alleged confession are summarized as follows, in the light most favorable to Plaintiff.

After being arrested on the outstanding drug warrant in approximately June 2017, Plaintiff was appointed counsel and diligently appeared at each of his scheduled court dates in state court. (Prop. Compl. at 6.) From the beginning of his case, Plaintiff told his attorney that he wanted a jury trial. (*Id.*) Plaintiff's case continued through the state court system. On July 1, 2019, Plaintiff appeared, with counsel, in Superior Court in Onslow County. (*Id.* at 7.) Plaintiff was under the impression he would have a jury trial that day, but that did not happen. (*Id.*) Instead, Officer Carr, who was present in court along with ADA Moser and Plaintiff's attorney, told Plaintiff his charges would be dismissed and asked Plaintiff, in the presence of Plaintiff's attorney, if Plaintiff wished to work as an informant for JPD. (*Id.*) Officer Carr also told Plaintiff it would be in Plaintiff's interest to work as an informant because JPD had additional criminal charges that could be brought against Plaintiff if Plaintiff chose not to work as an informant. (*Id.*) Officer Carr then gave Plaintiff a business card with his telephone number, and Plaintiff's attorney told Plaintiff that he could leave court and he would later be advised of his next court date. (*Id.* at 8.)

Plaintiff left court and later telephoned his attorney to inquire about Officer Carr's statement that the drug charges would be dismissed. (Prop. Compl. at 8.) Plaintiff's attorney said he would look into this issue and report back to Plaintiff. (*Id.*) Plaintiff also asked his attorney if he should call Officer Carr; Plaintiff's attorney said that decision was up to Plaintiff. (*Id.*) Later that day, Plaintiff decided to call Officer

10

Carr and reached a receptionist at JPD who advised Plaintiff to call back the following Monday morning. (*Id.*)

On July 5, 2019, Plaintiff spoke with Officer Carr via telephone, and the two arranged to meet at an office park about a mile away from Plaintiff's home. (Prop. Compl. at 9.) Plaintiff drove to the meeting location and waited about fifteen minutes before Officer Carr arrived in an unmarked car with another officer.[5] (*Id.*) Plaintiff exited his car and approached this unmarked car; Officer Carr rolled down the window and Plaintiff confirmed that it was Officer Carr. (*Id.*) Officer Carr asked Plaintiff to get in the front passenger seat of the unmarked car so they could "go[] down the road to talk," which Plaintiff did; the other officer sat in the rear passenger area. (*Id.*) Upon entering the car and closing the door, Officer Carr told Plaintiff they were going to the police station to talk. (*Id.*) They then drove to the JPD police station and went to an interrogation room. (*Id.*)

Upon entering the interrogation room, Officer Carr and his partner became more coercive and demanding. (Prop. Compl. at 9–10.) Specifically, Officer Carr began to demand that Plaintiff identify or otherwise provide information about persons in Plaintiff's neighborhood who police believed were involved in drug dealing. (*Id.*) Plaintiff declined to do so because he stated he did not associate with any drug dealers in his neighborhood. (*Id.*) Then, Officer Carr left the interrogation room for about ten minutes and returned with a document that he told Plaintiff to sign. (*Id.*) Plaintiff

---

[5] It is unclear whether this other officer was Officer Doyle, or a different JPD officer altogether. (Prop. Compl. at 9.)

11

perceived Officer Carr to be agitated and angry. (*Id.*) Plaintiff examined the document but found it difficult to read because he did not have his eyeglasses, which he told Officer Carr. (*Id.*) Officer Carr nevertheless persisted, telling Plaintiff not to worry about reading the document because all it said was that Plaintiff was willing to go back into the streets to sell drugs. (*Id.*) Plaintiff, feeling threatened and that he had no choice but to sign the document, signed the document. (*Id.*) About five minutes after signing the document, Officer Carr and his partner drove Plaintiff back to his car and told Plaintiff that he needed to call them with some information or they would arrest Plaintiff. (*Id.* at 11.)

Plaintiff alleges that the document he signed in the police station on July 5, 2019, was a written confession to the criminal charges that Plaintiff was in court for on July 1, 2019. (Prop. Compl. at 11–12.) According to the timeline alleged by Plaintiff, the charges that Plaintiff was in court for on July 1, 2019, were the drug charges from 2017. In September 2019, Plaintiff's attorney informed Plaintiff that he had been indicted as a habitual felon in connection with the 2017 drug charges and would need to appear in court. (*Id.*)

There are several problems with Plaintiff's claim that Officer Carr coerced Plaintiff into signing a written confession on July 5, 2019, in violation of the Fifth Amendment right against self-incrimination. The right against self-incrimination is implicated only when evidence is proffered during a criminal trial. *Riley v. Dorton*, 115 F.3d 1159, 1164–65 (4th Cir. 1997) (en banc), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *United States v. Riley*, 920 F.3d 200, 205 (4th

12

Cir. 2019) ("Even with regard to statements made under circumstances that would otherwise be viewed as coercive, the Self-Incrimination Clause is violated *only* if those statements are used in a criminal trial."); *Burrell v. Virginia*, 395 F.3d 508, 513–14 (4th Cir. 2005) (noting the "section 1983 claim fails to state a claim [where it] does not allege any *trial* action that violated [the] Fifth Amendment"). Here, Plaintiff has not alleged that the document he signed on July 5, 2019, has been used against him at trial. Nor has he even alleged that it is the basis of any criminal charge against him. *Cf. Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026–27 (7th Cir. 2006) (holding that a confession obtained without *Miranda* warnings was sufficient to trigger the Fifth Amendment's Self-Incrimination Clause because the confession formed the basis for the commencement of the criminal prosecution). Accordingly, Plaintiff has failed to state a claim based on the Fifth Amendment right against self-incrimination.

Plaintiff has also invoked the Fourteenth Amendment in his proposed complaint. (Prop. Compl. at 2; Letter at 2.) Given Plaintiff's pro se status, the undersigned liberally construes this as a substantive due process claim based on the allegedly coerced confession. *See Burrell*, 395 F.3d at 513 n.3 (noting that in *Chavez v. Martinez*, 538 U.S. 760 (2003), the Supreme Court "left open on remand the question" of whether a plaintiff could pursue a substantive due process claim for a coerced confession). Substantive due process claims based on police conduct must meet the conscience-shocking standard articulated by the Supreme Court in *Rochin v. California*, 342 U.S. 165 (1952), and *County of Sacramento v. Lewis*, 523 U.S. 833

13

(1998). *Chavez*, 538 U.S. at 774; *Burrell*, 395 F.3d at 513 n.3; *English v. Clarke*, No. 3:19-CV-2491-JMC-PJG, 2021 WL 4597184, at *13 (D.S.C. June 2, 2021) (analyzing a coerced confession substantive due process claim under the shocks-the-conscience standard), *report & recommendation adopted by* 2021 WL 4398371 (D.S.C. Sept. 27, 2021). "[C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action mostly likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849; *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 720 (4th Cir. 1991) ("[C]onduct which 'amount[s] to a brutal and inhumane abuse of official power literally shocking to the conscience' violates the substantive guarantees of the Due Process Clause" (second alteration in original) (citation omitted) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980))).

Here, there is no plausible interpretation of the facts as alleged by Plaintiff that would "shock the conscience" as required under existing precedent. Plaintiff initiated contact with Officer Carr, willingly entered the car and walked into the police station and up to the interrogation room, and then signed a document that he had difficulty reading. Even assuming Officer Carr was agitated and angry with Plaintiff and told Plaintiff to sign the document, that does not rise to the level of conscience-shocking behavior. *See English*, 2021 WL 4597184, at *13 (allegations that a coerced, false confession was obtained where police denied the plaintiff's request for his mother, ignored a request for an attorney, pulled a chair from underneath the plaintiff causing him to fall, questioned the plaintiff for several hours, and told the plaintiff he could only have an attorney if he signed the confession did

14

not rise to the level of conscience-shocking); *cf. McPherson v. Baltimore Police Dep't*, 494 F. Supp. 3d 269, 282 (D. Md. 2020) (plaintiff adequately pleaded a substantive due process violation based on fabrication of evidence where police fed plaintiff information they wanted to hear and held plaintiff in custody for more than thirteen hours).

    4.    Jury Trial Right

Plaintiff also alleges that Officer Carr, in conjunction with ADA Moser, denied him the right to a jury trial on July 1, 2019, by dismissing the drug charges that were pending against Plaintiff. (Prop. Compl. at 11–12.) This claim lacks an arguable basis in law or fact. According to Plaintiff's own version of the facts, those charges were never dismissed. Furthermore, a prosecutor's dismissal of charges cannot form the basis of a Sixth Amendment jury trial violation. This claim should therefore be dismissed.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's complaint be dismissed as frivolous or for failure to state a claim upon which relief can be granted.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **December 17, 2021**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and

15

Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. Dec. 2019).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 3rd day of December 2021.

_____
KIMBERLY A. SWANK
United States Magistrate Judge